## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

SHIRLEY ST. FORT-NWABUKU,                      CASE NO.: 18-cv-62823
on behalf of herself and all others
similarly situated,

     Plaintiff,

v.

VITAL PHARMACEUTICALS, INC.,
d/b/a VPX Sports, a Florida corporation,

     Defendant.

_____/

### MOTION TO DISMISS OR, ALTERNATIVELY,
### STRIKE FIRST AMENDED COMPLAINT

Defendant, Vital Pharmaceuticals, Inc., d/b/a VPX Sports ("VPX"), pursuant to Federal Rules of Civil Procedure 12(b) and 12(f), hereby moves to dismiss the [First] Amended Class Action Complaint ("FAC") (DE 20) filed by Plaintiff, Shirley St. Fort-Nwabuku ("Plaintiff"), or, alternatively, to strike the class allegations in the FAC, and states:

### INTRODUCTION

This case is another unfortunate example of opportunistic class action plaintiffs jumping on the bandwagon after learning of litigation filed elsewhere. Specifically, after Monster Energy Company ("Monster") filed an action against VPX related to the advertising of its BANG® energy products on September 18, 2018, in the Central District of California, and then publicly invited the filing of copycat "consumer class action lawsuits,"[1] the instant copycat action quickly followed. (DE 16.) Plaintiff, however, failed to appreciate that Monster had an ulterior motive for filing its case against VPX. VPX's BANG® energy drinks have been wildly successful with consumers, and as a result, Monster has been rapidly losing market share to VPX. And, in such cases, when Monster has failed to compete head-to-head with other products in the regular market, Monster has a long (and unsuccessful) history of trying to destroy its perceived competitive threats through vexatious litigation; *i.e.*, as the independent press has observed, "Monster decided to do what any

_____

[1] *See* Martin Caballero, *Monster Energy Sues VPX Over Bang Energy Claims*, BEVNET, Sept. 6, 2018, *https://www.bevnet.com/news/2018/monster-energy-sues-vpx-bang-energy-claims*.

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

good loser might, and sue."[2]

Plaintiff, therefore, made an ill-advised decision to essentially copy the claims made by Monster, and has now doubled down on that decision, attempting to cure the deficiencies in her original Class Action Complaint ("CAC") (DE 1) by simply attaching Monster's complaint (DE 20-1) as an exhibit to the FAC.  But, the Monster complaint, as well as the other amended allegations in the FAC, do nothing to ameliorate the deficiencies with Plaintiff's claims.  As such, the FAC, just like the CAC, fails to state a claim for relief and should be dismissed.  Alternatively, in the event that the FAC has not already been dismissed in its entirety, the class allegations should be stricken because it is clear from the face of the FAC that this case cannot be certified.

First, Plaintiff fails to state a claim to relief that is plausible on its face, because: (a) the formulaic and contradictory allegations negate the entire basis of the asserted claims for unjust enrichment and deceptive or unfair conduct violating Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); (b) the advertising terms "potent brain & body-rocking fuel," "SUPER," and "ULTRA" are nothing more than non-actionable puffery; (c) the claims for unjust enrichment and FDUTPA lack a factual basis, including an identification of the specific BANG® "products," among the many available for sale by VPX, that Plaintiff allegedly purchased, the "benefits"  that VPX allegedly failed to deliver, or the "ingredients" that these undisclosed products allegedly do not contain; and (d) Plaintiff points to no scientific studies or other factual support for her conclusory allegations that BANG® does not contain the pertinent ingredients or that the ingredients are ineffective for their advertised purpose or were not delivered as advertised. Further, Plaintiff's attempt to rely on a parallel action filed by VPX's competitor Monster, which Plaintiff attaches as the sole exhibit to the FAC, in no way bestows plausibility on Plaintiff's speculative, conclusory allegations.

Second, Plaintiff lacks Article III standing to seek injunctive relief, either on an individual or representative basis, because Plaintiff cannot establish that she is likely to suffer future injury from VPX's alleged conduct.

Finally, this action should be dismissed because, on the face of the FAC, it is clear that the proposed class, as defined in Paragraph 19 (the "Proposed Class"), could never be certified.  The

---

[2] *See* Catherine Davis, *Jack Owoc and Bang Energy Are Killing Monster Energy*, USA HERALD, Apr. 9, 2019, *https://usaherald.com/jack-owoc-bang-energy-killing-monster-energy/*.

Proposed Class is not ascertainable in that there is no reliable, objective criterion to identify purchasers of the various BANG® products.  Further, individualized questions of law and fact predominate Plaintiff's claims, and a Rule 23(b)(1) class is improper because Plaintiff primarily seeks monetary relief.

## RELEVANT ALLEGATIONS

Plaintiff initiated this class action on November 19, 2018, alleging that VPX has been unjustly enriched and violated FDUTPA based on the false advertising of its BANG® products.  Specifically, Plaintiff alleges that the statements that BANG® contains "potent brain & body rocking fuel: Creatine, Caffeine, CoQ10 & BCAAs (Branch Chain Amino Acids)," that the creatine is "SUPER," and the CoQ10 is "ULTRA" are false because BANG® allegedly either does not contain those ingredients, or the amounts contained in each can are insufficient to be effective to provide the claimed benefit to consumers.  (FAC, ¶¶ 6, 10.)  Although Plaintiff now alleges that the creatine in BANG® is "100 times lower than the minimum amount required needed for an effective dose," (FAC, ¶ 11), Plaintiff *still* does not identify the benefits or effects VPX allegedly promised BANG® would provide to consumers, or what it even means in Plaintiff's view for any amount of creatine to be "effective," as she repeatedly alleges.  Plaintiff alleges that there is no such thing as "SUPER" creatine or "ULTRA" CoQ10, but provides no factual support for these conclusory allegations.  (FAC, ¶¶ 10, 13.)

Plaintiff further vaguely alleges that she "purchased approximately one can of BANG . . . every few weeks at retailers within Florida including 7-11 stores" "in reliance of [sic] the representations contained on its labels and for the ingredients claimed to be therein."  (FAC, ¶ 17.)  Plaintiff does not allege the *actual* products allegedly purchased, including the flavors, the *actual* sizes of those undisclosed products, or *when* such purchases were allegedly made.

With respect to the marketing and labeling at issue, Plaintiff vaguely references VPX's "website and product labels," highlighting the alleged advertising on only *some* of VPX's many BANG® brand products to "potent brain & body-rocking fuel:  Creatine, Caffeine, CoQ10 & BCAAs (Branched Chain Amino Acids)," and the alleged advertising on those undisclosed products that "the Creatine is 'SUPER' and the CoQ10 is 'ULTRA.'"  (FAC, ¶ 6.)[3]  The crux of

---

[3] Plaintiff's failure to specify, among other things, the actual products allegedly purchased is material because, among other reasons, the labels on VPX's "caffeine-free" BANG® products clearly do not identify "caffeine" as an ingredient, as vaguely alleged by Plaintiff.  *See* VPX, https://bang-energy.com/product-category/bang-12-pack-caffeine-free (Bang® - 12 Pack Caffeine

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

Plaintiff's grievance is that, allegedly after purchasing the undisclosed product(s) at issue, "Plaintiff has since learned that BANG does not contain the marketed and labeled ingredients, or that the amounts are *de minimus*" (FAC, ¶ 17), thereby rendering BANG® mislabeled.  However, as with the alleged purchases, Plaintiff does not allege critical information about her alleged discovery "that BANG does not contain the marketed and labeled ingredients," including when and how she made such discovery, or which ingredients are allegedly mislabeled.  Likewise, Plaintiff does not point to a single scientific study or other verifiable factual claim for her conclusory allegations that BANG® does not contain the pertinent ingredients or that those ingredients are ineffective for their advertised purpose or were not delivered as advertised.

## CAUSES OF ACTION IN THE FAC

Plaintiff, on her own behalf and all those similarly situated, brings claims for unjust enrichment and purported violations of FDUTPA.  First, to state an unjust enrichment claim under Florida law, Plaintiff must allege that she "(1) conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So.3d 1081, 1094 (Fla. 3d DCA 2014).

Second, FDUTPA provides a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. (2018).  To state a FDUTPA claim, a plaintiff must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortg. Corp. v. Barton*, 988 So.2d 82, 86 (Fla. 4th DCA 2008) (citation omitted).

Significantly, because Plaintiff's unjust enrichment and FDUTPA claims are both predicated on the same factual allegations and both sound in fraud, these claims must be examined under the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also, e.g., Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 U.S. Dist. LEXIS 108720, at *19 (S.D. Fla. Sep. 23, 2011) (applying Rule 9(b) and dismissing FDUTPA claim for misleading advertising).

---

Free) (last visited Apr. 15, 2019).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

## ARGUMENT

### I.   PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

Plaintiff's allegations do not satisfy the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Accordingly, both claims for unjust enrichment and a violation of FDUTPA must be dismissed.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  While Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  A claim is made "plausible" only when the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).  The tenet that factual allegations in the complaint are assumed as true does not apply to legal conclusions couched as factual allegations. *Id*. at 678.

Here, Plaintiff fails to state plausible claims for unjust enrichment and violations of FDUTPA, both of which are predicated on Plaintiff's conclusory allegations that BANG® "**does not contain** the ingredients advertised or listed on its label that provide the effects that it advertises." (FAC, ¶¶ 1, 10, 40 (emphasis added).)  Critically, however, Plaintiff also alleges that this unidentified product contains **"insufficient or nugatory amounts"** of the pertinent ingredients, which claim directly contradicts the prior claim that these ingredients are allegedly absent or "lack[ing]." (FAC, ¶¶ 1, 6, 10, 34 (emphasis added).)  Thus, Plaintiff's own contradictory allegations are not only facially insufficient under the applicable pleading standard, but also negate Plaintiff's claims for unjust enrichment and violations of FDUTPA.

### A. VPX's Representations that BANG® Is "Potent" and Contains "SUPER" Creatine and "ULTRA" CoQ10 Are Non-Actionable Puffery

The FAC should also be dismissed with prejudice because the terms "potent," "body rocking," "super," and "ultra" are not specific and measurable terms; rather, they are nothing more than highly vague, subjective, and general terms that constitute non-actionable puffery.

"[I]n order for an alleged misrepresentation to be actionable [under FDUTPA], it must, as a threshold matter, be capable of inducing reasonable reliance by a consumer." *Thompson v. P&G*, No. 18-cv-60107, 2018 U.S. Dist. LEXIS 179888, at *5 (S.D. Fla. Oct. 19, 2018) (citing *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007)). "[S]ome representations, referred to as 'puffery,' are not actionable as a matter of law because no reasonable person could rely upon the representations as intended conveyances of fact." *Id.* (citations omitted); *Next Century Communs. Corp. v. Ellis*, 318 F.3d 1023, 1028 (11th Cir. 2003) ("[A] party is not justified in relying on and assuming to be true representations consisting of mere expressions of opinion, hope, expectation, puffing, and the like[.]").  As previously explained by the Eleventh Circuit:

> Puffing generally refers to an expression of opinion not made as a representation of fact. *Gulf Oil Corp. v. Federal Trade Commission*, 150 F.2d 106, 109 (5th Cir. 1945).  Statements made to puff goods are not actionable in misrepresentation *even if untrue* on the theory that no reasonable person would rely on general claims of superiority made by a salesman.

*Mfg. Research Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982) (emphasis supplied).  "Advertising which merely states in general terms that one product is superior is not actionable." *Smith-Victor Corp. v. Sylvania Elec. Prods.*, 242 F.Supp. 302, 308 (N.D. Ill. 1965). "In distinguishing actionable representations from non-actionable 'puffery' under FDUTPA, courts in this district have looked to whether the claims are specific and measurable, as opposed to vague and highly subjective." *Thompson v. Proctor & Gamble Co*, No. 18-60107, 2018 U.S. Dist. LEXIS 179888, at *5 (S.D. Fla. Oct. 19, 2018) (citations omitted).

Statements regarding general attributes like "safety," "performance," and "quality" are not actionable because they are not quantifiable. *See Next Century Commc'ns Corp.*, 318 F.3d at 1028 (statement of "strong performance" was not actionable because it was "not the sort of empirically verifiable statement that can be affirmatively disproven"); *In re Managed Care Litig.*, 150 F.Supp.2d 1330, 1346 (S.D. Fla. 2001) (statements of "rock solid health coverage," "high performance," and "quality" "are textbook examples of puffery").

Here, statements regarding general attributes like "potent," "super," and "ultra" are textbook examples non-actionable puffery.  These attributes cannot be empirically verified, quantified, or affirmatively disproven.  Tellingly, Plaintiff does not allege otherwise or cite to a single scientific supporting her conclusory allegations that BANG® product is somehow verifiably mislabeled or misleading.  At most, the statements at issue reflect the types of non-actionable opinions that any salesperson would make about his or her own products.  *See, e.g., Wojcik v.*

GORDON REES SCULLY MANSUKHANI LLP
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

*Borough of Manville*, 2010 N.J. Super. Unpub. LEXIS 174, at *8 (Super. Ct. App. Div. Jan. 29, 2010) ("Statements that the helmet was 'one of the best' and 'great' are opinions."); *Mfg. Research Corp.*, 693 F.2d at 1040. Plaintiff alleges the highly specific conclusion that there is "no such thing as 'SUPER' Creatine or 'ULTRA' CoQ10" but does not cite to any plausible, verifiable source to substantiate that claim.

Further, VPX does not represent that creatine, caffeine, CoQ10, and/or BCAAs are, by themselves, "potent." Rather, in employing the term "potent brain & body-rocking fuel," VPX is attesting to the potency of the BANG® product as a whole. Plaintiff conveniently disregards and omits the fact that, in representing that BANG® as a whole is "potent," VPX refers not only to Super Creatine, CoQ10, and BCAAs in the product, but also to the **300 mg of caffeine** and other ingredients contained in the product. In other words, Plaintiff cannot read the allegedly deceptive terms and affix them to the targeted ingredients in isolation to create the desired effect. *Thompson*, 2018 U.S. Dist. LEXIS 179888, at *6 (individual representations cannot be read in a vacuum); *See Eckler v. Wal-Mart Stores, Inc.*, 2012 U.S. Dist. LEXIS 157132, at *23 (S.D. Cal. 2012) (the "overall formulation that's behind the representations at issue" must be considered to determine whether defendant falsely advertised a product's contents).

Taking the product as a whole (and not isolating statements regarding only Super Creatine, CoQ10, and BCAA, as Plaintiff attempts to do), Plaintiff fails to establish that VPX's statements are false, let alone actionable. Amendment would be futile as a matter of law, and accordingly, the FAC should be dismissed with prejudice.

### B. Plaintiff Does Not Allege Any Specific Benefits or Effects that VPX Promised but Purportedly Failed to Deliver

Plaintiff vaguely alleges that VPX advertised certain (unspecified) "effects" to consumers of BANG®, (FAC, ¶ 1) and that the unidentified product does not "provide any of the claimed benefits to consumers" (*id.,* ¶ 10). However, Plaintiff fails to identify exactly what benefits VPX represented that BANG®, or any of its individual ingredients, would provide to Plaintiff, or what benefits Plaintiff expected to derive from BANG®, but purportedly did not receive. These pleading deficiencies render the FAC implausible and otherwise factually baseless such that it must be dismissed.

A plaintiff claiming that a product did not provide the benefits claimed by the manufacturer must at the very least identify the specific benefits or effects promised. For example, in *Hodges v. Vitamin Shoppe, Inc.*, No. 13-3381, 2014 U.S. Dist. LEXIS 5109, at *2 (D.N.J. Jan. 15, 2014),

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

the plaintiff sued a supplement store under a consumer protection statute for selling an allegedly mislabeled supplement.  The plaintiff claimed, as here, that the product could not deliver the promised benefits because the ingredients utilized to provide those benefits were either absent or were not present in quantities sufficient to effectively provide the claimed benefits.  *Id.*  The court in *Hodges* granted the defendant's motion to dismiss, noting the lack of any specific promise by the defendant of the alleged benefits recited by the plaintiff. *Id.* at *9–10. "Apart from attacking the statements about the product in the broadest terms possible, the Complaint does not point to where on the label or the website these benefits, as recited by Plaintiff, are purportedly promised by Defendant." *Id.*  Separately, the court further noted that, while the plaintiff's argument had "superficial appeal," "a closer examination reveals that it lacks a factual basis," because the plaintiff had failed to come forward with studies establishing that the pertinent ingredients were ineffective for their advertised purpose. *Id.* at *12–13.

Here, just as in *Hodges*, Plaintiff vaguely alleges that VPX "claimed" that BANG® consumers would derive certain unspecified "benefits" and "create the effects that are advertised on the product label (FAC, ¶ 44), but fails to identify any specific benefits or effects VPX allegedly promised.  Because Plaintiff does not plead the benefits VPX allegedly promised, let alone substantiate those missing allegations with verifiable scientific studies or other factual support, Plaintiff fails to state a plausible claim for relief.  This pleading deficiency, alone, warrants dismissal.  Moreover, Plaintiff fails to allege what, if any, amount of the ingredients would be sufficient to deem them to be "potent," "super," "ultra," or "effective" in her view, necessary to satisfy her expectations.

In short, Plaintiff has failed to identify the specific promises that VPX made regarding the challenged "benefits," her purported expectations of those benefits, and any actual purported failure by VPX to meet those undisclosed expectations.  Accordingly, Plaintiff fails to state a plausible claim for relief.

### C.  Plaintiff Has Not Established that BANG® Does Not Contain Creatine, CoQ10, and BCAA, or That Those Ingredients Are Ineffective

Plaintiff pleads in the alternative that BANG® either (a) does not contain the represented ingredients, or (b) does contain the represented ingredients, but that they are ineffective to serve the purpose represented by VPX.  (FAC, ¶¶ 1, 6, 10, 34, 40, 43.)  In addition to failing to plausibly

establish that BANG® does not contain creatine, CoQ10, and/or BCAAs, Plaintiff also fails to plead enough facts to establish that the product is not effective for its marketed purpose.

"In virtually all of the cases in which courts have held that the plaintiff adequately pled actual falsity in a false advertising case, the complaints in question cited to testing or studies that directly contradicted the advertising claim at issue." *Spector v. Mondelēz Int'l Inc.*, 2017 U.S. Dist. LEXIS 158140, at *9 (N.D. Ill. Sep. 27, 2017) ("Allowing the plaintiff to proceed on her false advertising claim without the pleading of factual allegations directly supporting her claim of falsity would improperly shift the burden of proof from the plaintiff to the defendant.") (citation omitted); *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012).  In cases where a plaintiff is claiming that a supplement is mislabeled, "the nature of the product at issue" is such that "only scientific testing . . . can show a supplement's claims to truly be false and/or misleading."  *Eckler*, 2012 U.S. Dist. LEXIS 157132, at *7 n.2.

Unadorned conclusory statements about whether a product contains a certain ingredient or is ineffective for its marketed purpose do not state a plausible claim for relief.  *See Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 U.S. Dist. LEXIS 131135, at *16 (S.D. Fla. Sep. 13, 2013) (dismissing FDUTPA claim alleging ineffectiveness of supplement because complaint provided no support for the allegation that the product did not function as advertised); *Hodges*, 2014 U.S. Dist. LEXIS 5109, at *16–17 (dismissing claims for misleading advertising of benefits provided by a supplement because the plaintiff failed to establish falsity with specific allegations); *Arroyo v. Pfizer, Inc.*, No. 12-4030, 2013 U.S. Dist. LEXIS 13789, at *11-16 (N.D. Cal. Jan. 31, 2013) (rejecting as conclusory plaintiff's allegations that dietary supplement "does not support healthy immune function" as advertised, because plaintiff failed to plead any underlying factual support); *Eckler*, 2012 U.S. Dist. LEXIS 157132, at *7 n.2 (finding speculative plaintiff's conclusory allegation that the glucosamine product at issue "did not rebuild her cartilage, lubricate her joints or improve her joint comfort as represented").

In *Guerrero*, a plaintiff filed a putative class action against a retailer under a FDUTPA theory and asserted that it sold honey that was falsely labeled as containing pollen as an ingredient. 889 F. Supp. 2d at 1352.  The retailer moved to dismiss, contending that the complaint was devoid of any factual support for the claim that the honey did not contain pollen.  *Id*.  The court agreed and dismissed the complaint because the complaint failed "to provide any more specific details regarding how Plaintiff knows that Defendant's honey did not contain pollen."  *Id*. at 1355–56.

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

Here, just as in *Guerrero*, Plaintiff provides *no* factual support for her conclusory allegations that BANG® allegedly does not contain creatine, CoQ10, or BCAAs.  Conspicuously absent from the FAC is any reference to scientific studies or other facts that might tend to support Plaintiff's bald conclusions.  The absence of such studies or facts demonstrates that Plaintiff's claims are due to be dismissed.  *See Eckler*, 2012 U.S. Dist. LEXIS 157132, at *7 n.2 (false advertising claims concerning supplements cannot be established without scientific testing).  Plaintiff's reliance on a separate, baseless lawsuit filed by VPX's competitor Monster (FAC, ¶ 12) is no substitute for valid scientific studies and does not render her claims plausible in *this* lawsuit.

Plaintiff similarly provides no factual support for her speculative allegations that those ingredients are not effective for the "promised benefits" that Plaintiff fails to identify in the FAC.  In *Toback*, the plaintiff filed a class action against GNC, a nutrition store, and alleged that its sale of a product marketed to promote joint health and function violated FDUTPA because the targeted ingredients were ineffective for that purpose, thereby rendering GNC's representations false.  2013 U.S. Dist. LEXIS 131135, at *2.  The defendant moved to dismiss the complaint, arguing that the plaintiff had failed to plausibly establish that the product was ineffective for its marketed purpose of repairing his cartilage.  *Id*.  This Court dismissed the complaint and explained that the Court need not accept as true the plaintiff's conclusion that the product was ineffective, because the complaint was "devoid of any further detail or support" and otherwise failed to elaborate on his allegations that the product was ineffective.  *Id*. at *17–18.

In the present case, just as in *Toback*, Plaintiff's conclusion that "there is no way [BANG®] [c]ould create the effect it advertises" (FAC, ¶ 1) completely lacks any factual support and does not raise Plaintiff's claims above the speculative level.  Although Plaintiff alleges that BANG® is ineffective, she does not allege, among other material details, the specific benefits she sought to derive from consuming BANG®, how often she consumed it, when and for how long she consumed the product, which product(s) she actually purchased or consumed, and whether she noticed any physical changes in her body from the product(s) as a whole, including the caffeine (or lack thereof in the caffeine-free versions).

Here, Plaintiff's bare conclusions that BANG® is ineffective are insufficient to plausibly establish that VPX's representations are false or misleading.  Without properly identifying, among other things, what benefits she expected to receive from BANG® and how she determined that

those benefits were in fact not provided (*i.e.*, that BANG® is "ineffective"), her claims are nothing more than hollow speculation.

## II.     PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF BECAUSE THERE IS NO ACTUAL THREAT OF HARM, NOW OR IN THE FUTURE

Plaintiff alleges that VPX continues to mislabel BANG® and that "Plaintiff and the Class have suffered and will continue to suffer irreparable harm if [VPX] continues to engage in such deceptive, unfair, and unreasonable practices." (FAC, ¶ 53.)  Based on the foregoing, Plaintiff seeks to enjoin VPX "from continuing the acts and practices above." (FAC, at p. 16 ¶¶ 2, 6, 7.) Plaintiff's requested injunctive relief fails for lack of Article III standing because she has failed to establish any actual harm, much less any future threat of harm.

Article III standing requires a plaintiff to establish that she "suffered an injury in fact." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)).  "The Supreme Court has long held that to seek prospective or injunctive relief, plaintiffs (including individually named plaintiffs representing a class) must be able to demonstrate more than mere injury from past wrongs."  *Veal v. Citrus World, Inc.*, No. 2:12-cv-801, 2013 U.S. Dist. LEXIS 2620, 2013 WL 120761, at *6 (N.D. Ala. Jan. 8, 2013).

> Although FDUTPA allows plaintiffs to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction, it does not displace Constitutional standing requirements. *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. 1st DCA 2000). Article III requires that a plaintiff seeking injunctive relief allege threat of future harm. "The Supreme Court has long held that to seek prospective or injunctive relief, plaintiffs (including individually named plaintiffs representing a class) must be able to demonstrate more than mere injury from past wrongs." *Veal v. Citrus World, Inc.*, Case No. 12-801, 2013 U.S. Dist. LEXIS 2620, 2013 WL 120761, at *6 (N.D. Ala. Jan. 8, 2013); *see also O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

*Lombardo v. Johnson & Johnson Consumer Cos*., No. 13-60536-Civ-Scola, 2014 U.S. Dist. LEXIS 156881, at *14 (S.D. Fla. Sep. 9, 2014); *see Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) (dismissing claim for injunctive relief sought under FDUTPA due to lack of future harm); *Ohio State Troopers Ass'n v. Point Blank Enters*., No. 0:17-cv-62051-UU, 2018 U.S. Dist. LEXIS 190100, at *36 (S.D. Fla. Oct. 26, 2018) (same); *Marty v. Anheuser-Busch Cos*., LLC, 43 F. Supp. 3d 1333, 1354 (S.D. Fla. 2014) (same).

Here, Plaintiff does not allege that she intends to purchase BANG® in the future.  Nor could she credibly allege that, should she decide to purchase BANG® again, she would be misled by VPX's labeling of the product.  In other words, there is no risk that Plaintiff will suffer a future injury due to VPX's alleged misrepresentations because of her alleged awareness that the product is mislabeled.  (*See* FAC, ¶ 18 (alleging that she purchased BANG® in reliance on VPX's representations, and that she "would not have purchased, would not have paid as much for the products, or would have purchased alternative.").)

In *Marty*, this Court considered *identical* allegations and concluded that "[t]he only logical inference from this allegation is that the plaintiffs no longer purchase [the product]," and found that the plaintiff lacked Article III standing to pursue injunctive relief under FDUTPA.  *Marty*, 43 F. Supp. 3d at 1351–1359 (finding that because there were "no allegations in the Amended Complaint that the plaintiffs would purchase [the product] in the future . . . the plaintiffs have failed to plead 'a real and immediate threat of future injury,' and thus have failed to plead standing to seek injunctive relief.") (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001).

## III.   THE CLASS ALLEGATIONS SHOULD BE STRICKEN BECAUSE IT IS CLEAR FROM THE FACE OF THE FAC THAT THIS CASE CANNOT BE CERTIFIED

### A.  Legal Standard

In some instances, the propriety of class certification can be gleaned from the face of the pleadings.  *See, e.g., Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (concluding that Rule 23(b)(3)'s predominance requirement could not be satisfied, and that such failure was "readily apparent from a reading of the . . . complaint").  Dismissal based on class action allegations is "an extreme remedy appropriate only where a defendant demonstrates 'from the face of the complaint that it will be impossible to certify the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove.'"  *Oginski v. Paragon Props. of Costa Rica, LLC*, 2011 WL 3489541, at *3 (S.D. Fla. Aug. 9, 2011) (citing *Romano v. Motorola, Inc.*, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007)) (internal alterations omitted).

### B.  The Proposed Class is Not Clearly Ascertainable and thus Cannot Be Certified

Plaintiff seeks to represent a class defined as "All consumers who purchased BANG products purporting to contain 'SUPER Creatine,' 'Ultra CoQ10,' and Branched Chain Amino Acids at retail locations in the United States for offsite, personal, family, or household purposes not for re-sale." (FAC, ¶ 19.)  The FAC should be dismissed, or, alternatively, the class allegations

stricken therefrom, because the Proposed Class is not ascertainable and could not be certified.

"Class action certification requires plaintiffs to satisfy the explicit and the implicit conditions of Rule 23." *Dapeer*, 2015 U.S. Dist. LEXIS 177097, at *7 (citing *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x. 782, 787 (11th Cir. 2014) (internal citation omitted)). "One of these implicit conditions is that the proposed class be 'adequately defined and clearly ascertainable.'" *Id.* (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal citation omitted); *Karhu v. Vital Pharm., Inc*., 2014 U.S. Dist. LEXIS 26756, at *7 (S.D. Fla. Mar. 3, 2014), *aff'd*, 621 F. App'x 945, 947 (11th Cir. 2015); *Mirabella v. Vital Pharm., Inc.*, 2015 U.S. Dist. LEXIS 43590, at *5 (S.D. Fla. Feb. 27, 2015). This standard requires that the class's "members can be ascertained by reference to objective criteria." *Bussey*, 562 F. App'x at 787. The objective criteria must be administratively feasible, meaning that the identification of class members is a manageable process that requires little, if any, individual inquiry. *Id.* "Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John v. Nat'l Sec. Fire & Cas. Co*., 501 F.3d 443, 445 (5th Cir. 2007).

In *Karhu*, the plaintiff brought a nationwide class action for claims of unjust enrichment and violations of FDUTPA against this same defendant (VPX) alleging misrepresentations about the benefits provided by a beverage. 2014 U.S. Dist. LEXIS 26756, at *2. This Court found that the class was not ascertainable because the product at issue was sold through retailers and distributors rather than through VPX directly to consumers, and VPX did not have a record of identities of potential class members. *Id*. at *8. The Court further explained that the drink was a relatively small purchase as compared to other larger items such as a car or appliance, making it unlikely that class members would have retained receipts or other records to confirm their identity. *Id*. The Court emphasized that it would not "trust individuals to identify themselves as class members through the submissions of affidavits" because it would deprive VPX of its due process rights to challenge the claims of the putative class members and allowing the defendant to contest each claim would require a serious of mini-trials that would defeat class treatment. *Id*. at *9. The Court found that the lack of an ascertainable class alone precluded certification. *Id*.

Similarly, in *Mirabella*, the plaintiff initiated a nationwide class action complaint asserting claims for unjust enrichment and violations of FDUTPA against VPX, alleging misrepresentations about a beverage that it manufactured, marketed, and sold through retailers, distributors, and its

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

website.  2015 U.S. Dist. LEXIS 43590, at *1–2.  This Court found that:

> The Proposed Class is not clearly ascertainable since the class may not be ascertained on the basis of objective criteria. Several factors support this conclusion. First, the nature of the purchase undermines the ascertainability of the class. The Product is generally sold for less than $3.00. []. The purchase of energy drinks is relatively small in nature, and, as a result, purchasers are less likely to retain receipts or other records of such purchases. *See Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGRx), 2012 U.S. Dist. LEXIS 186948, 2012 WL 8019257 (C.D. Cal. 2012).
>
> ***
>
> Second, the fact that Defendant conducts most of its sales through distributors who, subsequently, sell to retailers also increases the likelihood that the class is unascertainable. [] *Karhu v. Vital Pharmaceuticals, Inc.*, 13-60768-CIV, 2014 U.S. Dist. LEXIS 26756, 2014 WL 815253 (S.D. Fla. Mar. 3, 2014). Approximately 60-70% of Plaintiff's Product sales are made through distributors. []. Given the fact that Defendant does not necessarily have the proper record to establish to whom the distributors and retailers sell their product, it is less likely that the class is clearly ascertainable by reference to objective criteria.

*Id*. at *8–11.

Here, the FAC should be dismissed as a matter of law because Plaintiff has failed to plausibly allege that the Proposed Class is ascertainable through objective criteria.  It is undisputed that any alleged purchases by Plaintiff were made with "retailers within Florida including 7-11 stores," not with VPX directly.  (FAC, ¶ 17.)  Plaintiff further concedes that BANG® is sold "at numerous retail locations within the United States."  (FAC, ¶ 21.)  Notably, Plaintiff does not allege that she *ever* purchased BANG® directly from VPX.

*Karhu* and *Mirabella* are directly on point.  BANG®, just like the beverage products in both of those cases, is (a) a small purchase for which consumers are not likely to have in their possession any verifiable proof of purchase that would make identification, or the number of cans each consumer allegedly purchased, possible, and (b) primarily sold by various retailers throughout the United States, such that VPX clearly does not, and could not, identify individual purchasers.  Although *Karhu* and *Mirabella* were decided at the certification stage, judicial economy militates in favor of dismissing the FAC at this stage rather than prolonging the action and needlessly wasting the resources of this Court and the parties.  *See, e.g., Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) ("Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits.").

### C.  The FAC Fails to Establish Rule 23(b)(3) Predominance

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

In addition to establishing the elements of Rule 23(a), a plaintiff seeking to certify a class must satisfy one of the sections of Rule 23(b). *See* Fed. R. Civ. P. 23. Here, Plaintiff's claims for unjust enrichment and violations of FDUTPA cannot satisfy Rule 23(b)(3) predominance because there are significant individualized issues that cannot be determined with generalized proof.

Predominance "is perhaps the central and overriding prerequisite for a Rule 23(b)(3) class[,]" *Vega v. T-Mobile USA, Inc.*, 546 F.3d 1256, 1278 (11th Cir. 2009), and is "far more demanding than Rule 23(a)'s commonality requirement." *Jackson*, 130 F.3d at 1005. Predominance means that "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1557–58 (11th Cir.1989) (internal citations and quotations omitted). "Common issues of fact and law predominate if they a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004), abrogated in part on other grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) (internal quotations and citations omitted).

The predominance inquiry requires an examination of "'the claims, defenses, relevant facts, and applicable substantive law,' . . . to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." *Vega*, 564 F.3d at 1274 (quoting *Klay*, 382 F.3d at 1254). Predominance is defeated if the "plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." *Klay*, 382 F.3d at 1255.

### 1. Individualized Issues Predominate the FDUTPA Claim

The Court should dismiss the FAC to the extent it seeks certification of a nationwide FDUTPA class because FDUTPA clearly does not apply to the alleged claims of the putative class.

"In making choice-of-law determinations, the Court will apply the rules of the state in which it sits: Florida." *Karhu*, 2014 U.S. Dist. LEXIS 26756, at *27 (citation omitted)). Florida utilizes the "most significant relationship test" in the Restatement (Second) of Conflicts § 145 to determine the applicable law. *Id.* at *27. Section 145 requires the Court to examine: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Bishop v. Fla.*

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

*Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980).  The law of the state where a consumer purchased a product governs the claims of the Proposed Class.  *Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090, 1094 (Fla. 4th DCA 2003).

In *Karhu*, the plaintiff sought to represent a nationwide class of individuals that were allegedly deceived by the defendant's representations concerning a beverage and contended that FDUTPA applied to all claims nationwide (exactly as Plaintiff alleges in the FAC (at ¶¶ 42, 47)). 2014 U.S. Dist. LEXIS 26756, at *25.  This Court disagreed.  *Id*. at *27.  The Court explained that the state where each putative class member purchased the product at issue had the most significant relationship with their claims.  *Id*.  Applying the most significant relationship test, the Court found that Florida law did not apply to non-Florida purchasers because "the state with the most significant relationship to each class member's claims is the state where" each individual had purchased the product.  *Id*. at *27.  The Court's "conclusion [was] buttressed by the interest each state has in enforcing its unfair trade practices laws for the well-being of its own consumers."  *Id*. The Court concluded that common issues did not predominate because there is "significant variation in unfair trade practices statutes throughout the country."  *Id*. at *28.

Here, Plaintiff seeks to represent a nationwide class of consumers that purchased BANG® across all Fifty States.  Florida law does *not* apply to the alleged claims of non-Florida consumers, and the consumer protection statutes across the Fifty States are not uniform.  Accordingly, the Court should dismiss the FAC; alternatively, it should strike the class allegations.

### 2.  Plaintiff's Unjust Enrichment Claims Defeat Predominance

The FAC should also be dismissed because unjust enrichment cannot be determined on a class-wide basis with common proof, but instead requires individualized proof so as to defeat predominance.

#### a.  *Individualized fact questions predominate the unjust enrichment claims*

Plaintiff alleges that VPX has been unjustly enriched through its sale of BANG® product because, contrary to the product label's representations, the product allegedly lacked did not contain creatine, BCAA, and CoQ10 or "contained them in insufficient or nugatory amounts." (FAC, ¶ 34.)  Plaintiff's claims cannot be determined on a class-wide basis. Whether the quantity of any of the many ingredients in BANG® products, including Super Creatine®, BCAAs, or CoQ10, is "meaningful" (FAC, ¶ 13) to any given member of the Proposed Class will necessarily require individualized determinations as to the purpose and intention of each's member's purchase

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

of the product.  BANG® is sold in an array of flavors, is intended for many uses, is available in different serving sizes, and contains several ingredients that may or may not be of value to any given consumer within the Proposed Class.

VPX profiting from the sale of BANG® to a consumer that, for example, purchased the product for its caffeine content and/or "Sour Head" flavor, rather than its content of Super Creatine, BCAAs, or CoQ10, is not unjust because the consumer purchased the product specifically for its caffeine content and flavor rather than for other reasons.  *Vega*, 564 F.3d at 1275 (holding that unjust enrichment could not be determined in class-wide basis because "whether or not a given commission charge back was 'unjust' will depend on what each employee was told and understood about the commission structure and when and how commissions were 'earned'").  In other words, even taking as true Plaintiff's allegations that consumers were deceived into purchasing BANG® based on its labeling as to Super Creatine, BCAAs, and CoQ10, allegedly deceptive labeling is legally *irrelevant* to a consumer that purchased BANG® for any other reason for purposes of the unjust enrichment claim.

Additionally, Plaintiff's allegation that BANG® lacks "sufficient" amounts of Super Creatine, BCAAs, and CoQ10 further confirms that a nationwide unjust enrichment class is not possible.  But, what constitutes a "sufficient" amount of creatine, BCAAs, and CoQ10 is a highly subjective determination that is necessarily predicated on the specific subjective purpose in each individual consumer's mind and cannot be determined on a class-wide basis with common evidence.  Specifically, the quantity of those compounds contained in BANG® may be "sufficient" for the average purchaser that consumes BANG® for its flavor and energy-providing ingredients but may not be sufficient for a professional physique competitor that requires a greater quantity of those substances to achieve individual subjective goals.

These are highly individualized and critical inquiries that are of "foundational importance to the liability determination for each class member" and therefore renders class treatment of Plaintiff's unjust enrichment claim inappropriate.  *Vega*, 564 F.3d at 1275.

### b.  Individualized questions of substantive law predominate unjust enrichment claims by non-Florida purchasers

The FAC must be dismissed because a nationwide unjust enrichment class cannot be maintained due to conflicting variances in applicable state law.  "[T]he applicable law for each class member's unjust enrichment claim is the law of the state where" the product at issue is purchased. *Karhu*, 2014 U.S. Dist. LEXIS 26756, at \*24.

> Numerous courts have expressed deep skepticism about the ability of unjust enrichment claims meeting the predominance standard. In a multi-state class action, variations in state law may swamp any common issues and defeat predominance. *Klay*, 382 F.3d at 1261) (internal citation omitted). The plaintiff carries the heavy burden of showing, through "extensive analysis," that the substantive law in the varying states contains no material variations. *Id*.

*Dapeer*, 2015 U.S. Dist. LEXIS 177097, at *10; *Karhu*, 2014 U.S. Dist. LEXIS 26756, *24 ("Some courts have found variations in unjust enrichment laws to preclude finding predominance for multistate classes asserting unjust enrichment claims") (citation omitted).

In *Dapeer*, the plaintiff initiated a multi-state class action asserting claims for unjust enrichment and violations of FDUTPA alleging that the defendant profited from the sale of deceptively labeled sunscreen.  2015 U.S. Dist. LEXIS 177097, at *2. The plaintiff contended that a multi-state unjust enrichment class would be feasible because "the law of unjust enrichment is largely uniform." *Id*. at *11. This Court rejected the plaintiff's argument because "an objective review of the research belies this assertion." *Id*.  In so doing, the Court analyzed unjust enrichment law of various states. *Id*. at *12–13.  It explained that in some states, such as Florida, a claim for unjust enrichment requires that the benefit pass directly to the defendant, whereas in other states, such as Nevada, a plaintiff may establish liability even if the defendant receive only an indirect benefit.  *Id*.  And "[a]lthough Arkansas does not require a lack of legal remedy in order to begin a claim for unjust enrichment, Oklahoma, Hawaii, New York, and Mississippi do." *Id*. at *12.  This Court ruled that "vast differences between the black-letter law of the states" "defeats the predominance of any common questions of fact or law with respect to both of the Unjust Enrichment Subclasses." *Id*. at *13.

Here, as discussed above, Florida law does not govern the alleged claims of non-Florida purchasers of the product; rather the law of the forum where any given purchase was made governs. The present case is identical to *Dapeer*.  Plaintiff seeks to represent a nationwide unjust enrichment class, but as this Court made clear in *Dapeer*, unjust enrichment claims cannot be asserted by a nationwide class because there are vast differences in the law of the Fifty States.  Several other courts, including the Eleventh Circuit, have reached the same conclusion.[4]

---

[4] *See, e.g., Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 591 (9th Cir. 2012) ("[t]he elements necessary to establish a claim for unjust enrichment also vary materially from state to state"); *Thompson v. Bayer Corp.*, 2009 U.S. Dist. LEXIS 15190, 2009 WL 362982, at *4 (E.D. Ark. Feb. 12, 2009) ("[a]fter an extensive review of the law, the Court finds that the states' different approaches to, or elements of, unjust enrichment are significant"); *In re Aqua Dots Products Liab.*

### c. *The statute of limitations governing unjust enrichment claims varies by each state so as to defeat predominance*

The FAC is further due to be dismissed at this initial pleading stage because the statute of limitations ("SOL") governing unjust enrichment claims varies by state and conflict with one another so as to preclude a nationwide class of unjust enrichment claims.

Although individual affirmative defenses do not in of themselves defeat predominance, "the individual nature of the affirmative defenses is still relevant to whether predominance is satisfied." *Brown v. Electrolux Home Prods.*, 817 F.3d 1225 (11th Cir. 2016). Individualized "affirmative defenses that are coupled with several other individual questions [can] defeat predominance." *Dickson v. Atlas Roofing Corp. (In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.)*, 2017 U.S. Dist. LEXIS 88494, at \*25 (N.D. Ga. June 8, 2017) (citing *Brown*, 817 F.3d at 1241).

"[S]tates apply various statutes of limitations to unjust enrichment claims." *In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. 150, 164 (E.D. Pa. 2015) (citing cases from various jurisdictions). Thus, "[d]etermining whether each class member's claim is barred by the statute of limitations raises individual issues that prevent certification." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 149 (3rd Cir. 1998). Determining whether the statute of limitations has expired necessarily involves determining when it began to run. *Id*. And "[s]tates also vary in how the applicable statute of limitations starts to accrue." *In re Actiq Sales*, 307 F.R.D. at 164 (analyzing the events that would trigger the statute of limitations under the law of various states).

A collective action cannot be maintained where there are significant differences in periods of the applicative statute of limitations. *Jim Moore Ins. Agency, Inc. v. State Farm Mutual Auto. Ins. Co., Inc*., 2003 U.S. Dist. LEXIS 25550, 2003 WL 21146714, \*9 (S.D. Fla. 2003) (finding that predominance had not been established for nationwide breach of contract suit because of individualized issues pertaining to the substantive claims and varying applicable statutes of limitations); *Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 735 (S.D. Fla. 2007). A federal court cannot give a claim "longer life in the federal court than it would have had in the state court without adding something to the cause of action." *Ragan v. Merchs. Transfer & Warehouse Co.*, 337 U.S. 530, 533–34 (1949).

---

*Litig*., 270 F.R.D. 377, 386 (N.D. Ill. 2010) (the law of unjust enrichment "varies too much" from state to state and poses "insurmountable choice-of-law problems").

In *Marino*, the plaintiff sought to represent a nationwide breach of contract class.  245 F.R.D. at 733.  This Court explained that the Fifty States have statutes of limitations shorter than Florida's and that "utilizing a five-year statute of limitations for a nationwide class would encompass claims that would otherwise be time-barred in multiple states.  This result would be extremely prejudicial to the Defendant, and the Supreme Court does not condone this type of scenario."  *Id*. at 735.  The Court noted that the variances in the applicable statutes of limitations "would force the court to examine the nuances of each state's law."  *Id*. at 736.  Based on variances in the applicable statutes of limitations and the substantive law governing the plaintiff's claims, the Court found that "common issues of law or fact do not predominate."  *Id*.

In the present case, as discussed above, *supra*, there are vast differences in the unjust enrichment law of the Fifty States.  Furthermore, the statutes of limitations governing unjust enrichment claims are not uniform; rather, they vary state by state.  Accordingly, Plaintiff cannot establish predominance and the FAC should be dismissed.

### D. The Proposed Class Cannot Be Certified Under Rule 23(b)(1) Because the Primary Relief Sought is Monetary

Without any factual embellishment, Plaintiff alleges that the Proposed Class should be certified pursuant to Rule 23(b)(1).  (FAC, ¶¶ 31–33.)  However, the relief predominantly sought by Plaintiff in this case is monetary damages, which precludes certification of a (b)(1) class.

A Rule 23(b)(1) class may be maintained if:

> [P]rosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)(A).  The Eleventh Circuit has held that certification under Rule 23(b)(1) is prohibited where the plaintiff class principally seeks compensatory damages.  *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 n.7 (11th Cir.2000) (citation omitted);  *In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1545 (11th Cir. 1987) ("Since the plaintiffs sought compensatory damages, the district court erred by certifying the class pursuant to (b)(1)(A)"); *see Grillasca v. Hess Corp.*, 2007 U.S. Dist. LEXIS 53356, at *44-45 (M.D. Fla. July 24, 2007) ("strongly" disagreeing with plaintiffs' attempt to certify a (b)(1)(A) class under FDUTPA because

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

the class had sought compensatory damages); *Altrichter v. Inamed Corp.*, 2010 U.S. Dist. LEXIS 145069, at *132 (N.D. Ala. May 19, 2010) (noting the "general prohibition against certification of money-damages actions under Rule 23(b)(1)(B)"); *Collins v. Int'l Dairy Queen*, 168 F.R.D. 668, 675 (M.D. Ga. 1996) ("Although plaintiffs have an interest in obtaining declaratory and injunctive relief, the predominant nature of this case is for money damages.  Thus, the court finds that certification is not appropriate under either Rule 23(b)(1) or 23(b)(2).").

"Courts have found relief to be predominantly related to money damages when the operative consumer protection statute provides for monetary damages as the appropriate relief." *Harris v. Nortek Global HVAC LLC*, Case No. 14-CIV-21884, 2016 U.S. Dist. LEXIS 18795, (S.D. Fla. Jan. 29, 2016) (citation omitted); *Karhu*, 2014 U.S. Dist. LEXIS 26756.  Thus, a FDUTPA claim seeking monetary damages in conjunction with declaratory or injunctive relief, as the Plaintiff is here, may not be certified under Rule 23(b)(1). *Id.*

Here, a Rule 23(b)(1) class cannot be certified because the allegations in FAC leave no doubt that the primary relief sought is monetary rather than declarative or injunctive. (*See, e.g.,* FAC ¶¶ 17; 23(c), (d), (g), (h); 24; 38; 50; 51; *id.* at p. 16, ¶¶ 3, 4, 6, 7.)  That Plaintiff is suing under FDUTPA, a consumer protection statute, buttresses the conclusion that the primary relief sought is monetary.  *See Stark*, 2016 U.S. Dist. LEXIS 18795, at *37–39; *Harris*, 2016 U.S. Dist. LEXIS 18795, at *4.  Tellingly, Plaintiff does not provide any factual enhancement in support of her allegation that a Rule 23(b)(1) is appropriate and merely recites the Rule, which is insufficient. *See Iqbal*, 556 U.S. at 768 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'") (quoting *Twombly*, 550 U. S., at 555).

## <u>CONCLUSION</u>

As demonstrated herein, Plaintiff's FAC contains conclusory and contradictory assertions, without necessary specificity or factual support necessary to satisfy the pleading standards under *Twombly* and *Iqbal*, much less the required elements for Plaintiffs' asserted claims.

**WHEREFORE**, Defendant VPX respectfully requests that the Court enter an order granting this motion and dismissing the FAC in its entirety, striking the class allegations, and such other further relief as it deems appropriate under the circumstances.

/

/

/

Respectfully submitted on April 15, 2019,

*s/ Andrew R. Schindler*_____
**JOSEPH A. SACHER**
Florida Bar No. 174920
*jsacher@grsm.com*
**ANDREW R. SCHINDLER**
Florida Bar No. 124845
*aschindler@grsm.com*

**GORDON REES SCULLY
MANSUKHANI LLP**
100 SE 2nd Street, Suite 3900
Miami, Florida 33131
Tel: (305) 428-5330
*Attorneys for Defendant,
Vital Pharmaceuticals, Inc.*

and

Marc J. Kesten (Florida Bar No. 691801)
*marc.kesten@vpxsports.com*
Francis Massabki (Florida Bar No. 687901)
*frank.massabki@vpxsports.com*
Vital Pharmaceuticals, Inc.
1600 North Park Dr.
Weston, FL 33326
Telephone:      (954) 641-0570
*Attorneys for Defendant,
Vital Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed on April 15, 2019 with the Clerk by using the CM/ECF system, which will notify all counsel of record of this filing.

*s/ Andrew Schindler*_____
Andrew R. Schindler
