# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 18-cv-62823-RAR

SHIRLEY ST. FORT-NWABUKU, *et al.*,

      Plaintiff,

v.

VITAL PHARMACEUTICALS, INC.,
d/b/a VPX Sports, a Florida corporation,

      Defendant.

_____/

TIFFANY NGUYEN, *et al.*,

      Plaintiffs,

v.

VITAL PHARMACEUTICALS, INC.,
d/b/a VPX Sports, a Florida corporation,

      Defendant.

_____/

## PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANT'S CONSOLIDATED MOTION TO DISMISS

Defendant Vital Pharmaceuticals, Inc. d/b/a VPX Sports ("VPX") manufacturers, markets and sells BANG, a purported premium sports and energy drink product. Through a calculated marketing campaign, VPX prominently labels and represents BANG as "potent brain & body-rocking fuel: Creatine, Caffeine, CoQ10 & BCAA (Branched Chain Amino Acids)" containing "SUPER CREATINE," "ULTRA CoQ10," and "BCAAs." These representations are deceptive and misleading. Scientific testing demonstrates that BANG contains either no creatine, CoQ10, and BCAAs, or that these ingredients are present in quantities far less than necessary for BANG

1

to deliver any of the represented benefits to consumers. *See* ECF Doc. 56-1  ("Nguyen ACAC") ¶¶ 21, 23, 27; *see also* ECF Doc. 20 ("St. Fort ACAC") ¶¶ 6-16.

VPX's consolidated motion to dismiss regurgitates standard arguments frequently proffered by defendants in response to a consumer FDUTPA complaint alleging misrepresentations regarding their products – (1) the massive market-tested advertising campaign and all the alleged misrepresentations are mere "puffery"; (2) consumers have not proved and established in their initial complaint that the alleged misrepresentations are demonstrably false; and (3) plaintiffs lack standing to seek an injunction because they already know about the misrepresentations and therefore cannot be harmed again in the future.  Significantly, Judge Bloom of this District recently found VPX's standard "puffery" defense arguments meritless in a related Lanham Act case against VPX regarding the very same "Super Creatine" at issue here. *See ThermoLife Int'l LLC v. Vital Pharm. Inc.*, No. 19-CV-61380, 2019 WL 4954622, at *3-4 (S.D. Fla. Oct. 8, 2019).

For the reasons that follow, this Court should deny VPX's motion to dismiss. First, the factual questions regarding whether VPX misrepresents the contents, potency, and effects of its BANG products will be the subject of significant evidence and expert testimony, rendering inappropriate VPX's request to decide this matter at this early stage of the proceedings. The law is clear: "[w]hether conduct constitutes an unfair or deceptive trade practice is . . . *a question for the fact finder*." *Witt v. La Gorce Country Club, Inc*., 35 So. 3d 1033, 1040 (Fla. 3d DCA 2010) (emphasis added); *see also Reilly v. Amy's Kitchen, Inc*., 2013 WL 9638985, at * 5 (S.D. Fla. Dec. 9, 2013) (same).

At this stage of the proceedings, as a matter of law, VPX is simply wrong in contending that its conduct as alleged is not deceptive. In making this argument, VPX ignores well-established precedent from the Southern District of Florida:

> [W]here the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See [Bell Atl. Corp. v.] Twombly*, 550 U.S.[ 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007)] "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citation omitted).

*Mollicone v. Universal Handicraft*, No. CV 17-21468-CIV, 2017 WL 5897438, at *2 (S.D. Fla. Nov. 29, 2017). This consolidated opposition will successfully show that Plaintiffs have more than met the relevant plausibility standard.[1]

## I. Plaintiffs' Claims Are Not Subject to the Heightened Pleading Requirements of Fed. R. Civ. P. 9(b).

As an initial pleading matter, VPX insists that all of Plaintiffs' claims sound in fraud and are thus governed by the heightened pleading requirement of Rule 9(b). FDUTPA and analogous state court consumer protection acts are remedial statutes designed to simplify and streamline the prosecution of misleading and deceptive consumer claims, free from the overly technical and frequently burdensome requirements of Rule 9(b). *Harris v. Nordyne, LLC*, No. 14-CIV-21884, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014) ("FDUTPA is a remedial statute deigned to

---

[1] Pursuant to Rule 7.1(c)(2), S.D. Fla. L.R., responses to motions are permitted to be 20 pages. However, the local rule is silent regarding consolidated oppositions. This Court's policies and procedures provide that "[m]ultiple Plaintiffs or Defendants shall file joint motions with co-parties unless there are clear conflicts of position. The applicable pages limits for individual parties shall apply for joint pleadings absent leave of court." Accordingly, typically multiple plaintiffs are restricted to the individual page limitations pursuant to this District's local rules. However, on September 17, 2019, this Court entered the *Omnibus Order* (DE 48), permitting Defendant's renewed motion to dismiss to exceed twenty pages, and permitting each Plaintiff to file their own response. Plaintiffs construe this as leave to file a consolidated response in excess of twenty but no more than thirty pages to avoid redundant briefing.

protect consumers. FDUPTA itself instructs courts to construe its provisions liberally. FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud, which is why a FDUTPA plaintiff need not prove the elements of fraud to sustain an action under the statute.") (quotations and citations omitted); *see also U.S. Bank Nat. Ass'n v. Capparelli*, No. 13-80323-CIV, 2014 WL 2807648, at *5 (S.D. Fla. June 20, 2014) (same).

Judge Scola recently understood the underlying policy goals of these consumer protection acts when he held unequivocally that FDUTPA claims are not subject to Rule 9(b). *See Douglas Weiss, v. Gen. Motors LLC*, No. 19-21552-CIV, 2019 WL 5394621, at *7 (S.D. Fla. Oct. 22, 2019) ("Accordingly, this Court joins the decisions holding that the requirements of Rule 9(b) do not apply to a claim under FDUTPA."). Likewise, the Middle District of Florida recently concluded that FDUTPA claims not sounding in fraud do not face Rule 9(b)'s heightened pleading requirements. In a well-reasoned opinion, the Middle District highlighted its reasoning, including discussing the underlying purposes of a FDUTPA claim compared to one for traditional fraud:

> The purpose of Rule 9(b) is to alert defendants to the precise misconduct with which they are charged and protect defendants against spurious charges. Requiring Plaintiffs to plead their FDUTPA claims with particularity would not advance this goal as FDUTPA's elements are already more particularized than those of common law fraud. That is, a complaint which states plausible allegations supporting FDUTPA claims will generally put a defendant on fair notice of the nature of a plaintiff's claims and the grounds upon which they are based, without the risk of subjecting the defendant to specious claims. Because Rule 9(b) does not apply to FDUTPA claims, its requirements cannot serve as a basis to dismiss Plaintiffs' FDUTPA claims.

*Allstate Ins. Co. v. Auto Glass Am., LLC,* No. 618CV2184ORL41LRH, 2019 WL 4751729, at *6 (M.D. Fla. Sept. 30, 2019) (footnote, citations, and quotations omitted).

Although courts in this district have sometimes examined FDUPTA under the heightened pleading standard of Fed. R. Civ. P. 9(b), the better reasoned approach is to reject heightened

scrutiny at the motion to dismiss stage and permit consumer plaintiffs to plead FDUTPA claims under the general requirements of Rule 8(a). *See Harris,* 2014 WL 12516076, at *4 ("Therefore, even where a FDUTPA claim includes allegations which implicate fraudulent conduct, it need not meet the heightened pleading requirements of Rule 9(b))."); *see also Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1342 (S.D. Fla. 2016) (quoting *Gastaldi v. Sunvest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009)) ("The requirements of Rule 9(b) do not apply to claims under the FDUTPA.")); *Rossi v. Darden*, No. 16-21199-CIV, 2016 WL 9254640, at *8 (S.D. Fla. Nov. 16, 2016) (same).

In any event, the remainder of Nguyen Plaintiffs' claims are not subject to Rule 9(b).  This is a class deceptive marketing case, which does not involve fraud. For example, plaintiff Nguyen's claims for violations of California's Unfair Competition Law ("UCL"), the Consumer Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL") are not governed by Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-05 (9th Cir. 2003) (fraud is not an essential element either of a CLRA or a UCL claim, and to the extent that allegations under these claims do not sound in fraud, they do not need to meet 9(b)); *Janney v. Mills*, 944 F. Supp. 2d 806, 817 (N.D. Cal. 2013) (FAL claims are only subject to Rule 9(b) pleading requirements where they are premised on fraud allegations). Plaintiff Muscara's negligent misrepresentation claim is also not subject to Rule 9(b). *See Donachy v. Intrawest U.S. Holdings, Inc.*, No. CIV.A. 10-4038 RMB, 2012 WL 869007, at *5 (D.N.J. Mar. 14, 2012) (Where a "negligent misrepresentation claim is specifically alleged as a separate claim, it is not subject to Rule 9(b)'s heightened pleading requirements…") (citations and footnote omitted). Plaintiff Muscara's claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") does not implicate Rule 9(b). *See Goleman v. York Int'l Corp.*, No. CIV.A. 11-1328, 2011 WL 3330423, at *8 (E.D. Pa. Aug. 3,

2011) ("A plaintiff alleging deceptive conduct may proceed without satisfying the particularity requirement of Federal Rule of Civil Procedure 9(b).") (citation and quotations omitted).

Rule 9(b) also does not apply to Nguyen Plaintiffs' warranty claims. *See Wilson v. Chattem, Inc.*, No. 09-80681-CIV, 2009 WL 10667847, at *3 (S.D. Fla. Sept. 17, 2009) ("In comparison, to support a claim for breach of an implied or express warranty, a plaintiff is not required to show a misrepresentation or false statement. . . . In the absence of clear caselaw instructing the Court to do so, the Court declines to extend the pleading requirements of Rule 9(b) to claims for express or implied warranty.") (citations omitted).

Finally, as demonstrated below, to the extent Rule 9(b) would apply to any particular claim, Plaintiffs have adequately pled their claims with sufficient particularity.

## II.     VPX's Labeling and Advertising Misstates Verifiable Facts.

VPX engaged in a calculated campaign to misrepresent verifiable facts it knew potential purchasers deemed important and would rely on in deciding whether to purchase BANG. Accordingly, VPX's puffery argument has no merit.

"Specific, quantifiable 'statements of fact' that refer to a product's absolute characteristics may constitute false advertising, while general, subjective, unverifiable claims are 'mere puffery' that cannot." *Marty v. Anheuser-Busch Cos.*, 43 F. Supp. 3d 1333, 1342 (S.D. Fla. 2014). "The Eleventh Circuit has found puffery where a representation was 'not the sort of empirically verifiable statement that [could] be affirmatively disproven.'" *Thompson v. P&G*, No. 18-CV-60107, 2018 WL 5113052, at *2 (S.D. Fla. Oct. 19, 2018) (quoting *Next Century Communs. Corp. v. Ellis*, 318 F.3d 1023, 1028 (11th Cir. 2003)). "[T]he question this Court must ask is whether a reasonable person could rely on Defendant's representations or if, instead, a reasonable person

would understand that the representations are something akin to 'general claims of superiority made by a salesman.'" *Id*. (citation omitted).

VPX misrepresented specific facts. The phrase "SUPER CREATINE™" appears prominently on the front of BANG and is bolded in the Products' ingredient panel. Nguyen ACAC ¶ 16; St. Fort ACAC ¶ 7. The phrases "BCAA AMINOS" and "ULTRA COQ10" appear prominently on BANG's side and back, respectively. *Id.* BANG's labeling twice represents the Products to be "POTENT BRAIN AND BODY FUEL," and also proclaims "Power up with BANG's potent brain & body-rocking fuel: Creatine, Caffeine, CoQ10 & BCAAs (Branched Chain Amino Acids)." Nguyen ACAC ¶ 16; St. Fort ACAC ¶¶ 6-7. VPX's description of BANG on the Amazon website similarly represents "[p]ower up with BANG's potent brain and body-rocking fuel" and "SUPER CREATINE & BCCA INFUSION." Nguyen ACAC ¶ 17. Each statement constitutes a verifiable fact. None are puffery.

VPX's argument to the contrary relies largely on removing words from challenged statements and taking phrases out of context. *See* Def's Consolidated Mot. To Dismiss ("MTD"), ECF Doc. 57, at 7-8 (separating "potent," "super," and "ultra" from "potent brain and body fuel," Super Creatine," and "Ultra CoQ10," respectively). When addressing a defendant's assertion that its statements were mere puffery, courts look to the entirety of the statements in question in addition to other statements on the product's labeling and allegations relating to the defendant's overall marketing campaign—they do not parse phrases. *See Marty*, 43 F. Supp. 3d at 1342 (recognizing that statements are not evaluated in a vacuum); *Wasser v. All Market, Inc.*, No. 16-21238-CIV, 2017 WL 11139701, at *5 (S.D. Fla. Nov. 13, 2017) (same).

Tellingly, VPX fails to cite to a single case dismissing a FDUTPA claim in advancing its puffery argument. VPX's primary case assessing the puffery defense under FDUTPA, *Thompson*,

came out in favor of the plaintiffs. There, the court was considering P&G's argument whether "trusted," "mild," and "gentle on hands" could be actionable representations. *Thompson,* 2018 WL 5113052, at *2. The court concluded that, although the statements might not be "empirically verifiable," they could still be "taken to amount to more than just a salesman's lavish claims." *Id.*

Plaintiffs' allegations are similar to those addressed in *Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687 (S.D. Fla. 2010), *vacated on other grounds*, *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011). In that case, the claimed "mixture of Bb-12 and inulin" in the defendant's Yo-Plus yogurt, trademarked as "Optibalance" was represented as providing habitual consumers with digestive health benefits, by aiding in the promotion of digestive health. *Fitzpatrick,* 263 F.R.D. at 691. The plaintiff alleged that contrary to such representations, eating Yo-Plus does not provide any digestive health benefits that cannot be obtained from eating normal yogurt. *Id.* at 692. Likewise, VPX's labels prominently feature SUPER CREATINE, ULTRA COQ10, and BCAA AMINOS, further claiming that these ingredients provide potent brain & body rocking fuel providing energy while protecting against the ensuing proverbial brick wall often befalling energy drink consumers. These claims are false and misleading. The touted ingredients are absent, or as in *Fitzpatrick*, are supplied in quantities too small to achieve the sought-after benefits. *See* Nguyen ACAC ¶ 3; St. Fort ACAC ¶ 10.

SUPER CREATINE is a trademarked phrase and is actionable because it misleads consumers into thinking that the Products contain something that the competition does not. *See Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 695 (S.D. Fla. 2010). The phrase is factually verifiable, misleading, and does not constitute puffery.

VPX contends the alleged presence of caffeine in the Products supports the claim that the Products are "potent." But, the claim on the label is: "[p]ower up with BANG's potent brain &

body-rocking fuel: Creatine, Caffeine, CoQ10 & BCAAs." This means that creatine, CoQ10, and BCAAs contribute to the potency of the Product. In actuality, these ingredients are missing or included in amounts so small as not to have any appreciable impact. BANG's lacking these three ingredients renders VPX's labels false, misleading, and likely to deceive a reasonable consumer. Judge Bloom of this very District recently rejected VPX's "mere puffery" arguments regarding "Super Creatine." *See ThermoLife Int'l LLC*, 2019 WL 4954622 *3-4. Accordingly, VPX's puffery argument should be rejected.

### III. Plaintiffs Plausibly Allege Specific Benefits That VPX Promised and Failed to Deliver.

Plaintiffs' Amended Complaints allege detailed facts establishing that VPX misrepresented the purported benefits Plaintiffs would receive from consuming BANG, and establishing that Plaintiffs did not receive the benefits promised. VPX's claims to the contrary fail.

Plaintiffs allege that VPX represents that its "Creatine is "SUPER," and that its CoQ10 is "ULTRA[.]" *See* Nguyen ACAC ¶ 15; St. Fort ACAC ¶ 6. Regarding Super Creatine, testing results of BANG have revealed that the product contains no creatine or less than .04g. *See* Nguyen ACAC ¶ 15; St. Fort ACAC ¶ 11.[2] Commonly used dictionaries define "Super" as follows: "of high grade or quality[,]" "very large or powerful[,]" and "exhibiting the characteristics of its type to an extreme or excessive degree[.]" *Super*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/super (last visited Oct. 22, 2019). To an objective and reasonable consumer, less than .04g of creatine cannot possibly be considered "Super." Less than .04g is not a large or powerful amount of creatine, does not provide the characteristics of creatine to an

---

[2] Less than .04 grams converts to 40 milligrams, which is consistent with how such a fact is pled in the St. Fort ACAC.

extreme or excessive degree, and arguably delivers no quality creatine because the amount is so miniscule that it cannot provide any benefit.

VPX may try to combat this argument with the clever statement that while BANG contains a small amount of creatine, it is of such high-quality that the creatine is Super. Such logic is deeply flawed. BANG's clever argument is analogous to the following: BANG claims that it contains "Super" caffeine when in fact independent testing has revealed that BANG contains only 2 mg of caffeine. Such a trace amount of caffeine can in no way be "Super." The average cup of coffee contains anywhere between 95-165 mg of caffeine.[3] The average cup of decaf coffee contains 2-5 mg of caffeine.[4] No reasonable consumer would consider a coffee product with 2 mg of caffeine to have "Super" caffeine, even if sourced from the highest quality coffee beans in the world.

Independent testing has revealed on multiple occasions that BANG contains less than .04 grams of creatine while the smallest recommended dose of creatine is 3 grams. *See* Nguyen ACAC ¶ 21; St. Fort ACAC ¶ 11. VPX tries to confuse the Court by mentioning the concept of a clinically effective dose. But Plaintiffs are not arguing that BANG needs to provide a clinically effective dose of the ingredient. Rather, Plaintiffs only allege that VPX falsely represented the composition of BANG when it used adjectives such as Super and Ultra to describe BANG's ingredients, when in fact BANG contained none or virtually none of these ingredients.

The same logic used to defeat VPX's Super Creatine argument applies to VPX's representation regarding Ultra CoQ10. When used as an adjective (as VPX has used the word on BANG) common dictionaries define Ultra as "going beyond others or beyond due limit:

---

[3] Mayo Clinic Staff, *Caffeine content for coffee, tea, soda and more*, MAYO CLINIC, (Apr. 14, 2017), https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/caffeine/art-20049372.

[4] *See id*.

EXTREME[.]" *Ultra*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/ultra (last visited Oct. 22, 2019).  Given that publicly available testing has revealed that BANG contains no CoQ10 at all, VPX has in no way delivered the benefits of extreme CoQ10. *See* Nguyen ACAC ¶ 23.

VPX's reliance on *Hodges* is also unpersuasive. *Hodges v. Vitamin Shoppe, Inc.*, No. CIV.A. 13-3381 SRC, 2014 WL 200270 (D.N.J. Jan. 15, 2014). VPX argues that "[b]ecause Plaintiffs do not plead the benefits VPX allegedly promised, let alone substantiate those missing allegations with verifiable scientific studies or other factual support, Plaintiffs fail to state a plausible claim for relief." MTD at 9. However, as discussed above, Plaintiffs do plead the benefits VPX specifically promised. Plaintiffs also plead facts, including verifiable scientific studies, demonstrating that BANG was incapable of delivering the benefits represented. Plaintiffs specifically rely on the scientific testing completed by Monster Energy Co. in its case against VPX, which Nguyen Plaintiffs referenced in their ACAC while the St. Fort Plaintiff attached the entire Monster complaint as an exhibit to her amended complaint. In addition, Nguyen Plaintiffs rely on other scientific testing conducted in similar cases against VPX, including *Madison, et al. v. Vital Pharmaceuticals, Inc.*, Case No. 4:18-cv-06300 (N.D. Calif., Oct 15, 2018).[5]

_____

[5] The Eleventh Circuit permits this Court to consider the complaints from *Monster* with respect to both Plaintiffs and *Madison* with respect to Nguyen Plaintiffs because Plaintiffs made the testing a part of their Amended Complaints. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). For example, Nguyen Plaintiffs specifically referenced the testing results from each case in their Amended Complaint. *See* Nguyen ACAC at ¶¶ 21, 21 n.13, 27 n.20.  St. Fort Plaintiff specifically references the Monster case (St. Fort ACAC ¶ 12) and attached the relevant complaint as an exhibit to her complaint. *See*  St. Fort ACAC at Ex. 1. In addition, St. Fort Plaintiff relies upon the testing provided in the Monster complaint. *See*  St. Fort ACAC ¶ 11, *see also* Ex. 1 ¶ 36. Moreover, the authenticity of these documents cannot be challenged because the Court can specifically trace each complaint back to its original docket. Finally, each complaint is central to the Plaintiffs' claims because they provide the scientific testing that substantiates Plaintiffs' claims, to the extent such is required at the pleadings stage (it is not). Accordingly, this Court may consider the testing referenced in each complaint.

Plaintiffs' claims do not suffer from the flaw noted in *Hodges*, where the court found that "[t]he basis of Plaintiff's claim of falsity appears to rest on the *absence* of scientific support for delivery of benefits at the dosages indicated by the Product." *Hodges*, 2014 WL 200270, at *4. Although not required, Plaintiffs set forth specific scientific studies supporting that VPX's BANG products do not contain the desired ingredients in amounts sufficient to meet the represented benefits. For example, Plaintiffs' allegation in paragraph 21 of the Nguyen ACAC and paragraph 11 of the St. Fort ACAC regarding BANG's creatine content is contradicted by VPX's own statements, which are included in the Monster Complaint.

> [W]hile VPX conceals how much Super Creatine is in BANG, product testing shows that there are fewer than 40 *milligrams* in one can. That is roughly ***100 times less than the amount of creatine necessary to provide a measurable health benefit***. VPX knows this. It advises consumers that "researchers found that athletes looking to get the most gains in size and strength should include 4-6 grams [4,000 to 6,000 milligrams] of creatine before and 4-6 grams [4,000 to 6,000 milligrams] of creatine after exercise." Moreover, VPX cited studies in its patent application that analyze creatine supplementation regimens at even higher levels—some of which were ***500 times*** the dose included in BANG.

*See Monster Energy Co. v. Vital Pharmas., Inc.*, *et al.*, Case No. 5:18-cv-01882 (C.D. Calif., Apr. 3, 2019) (this specific reference can be found in Doc. 61) (emphasis in original); *see also* St. Fort ACAC, Ex. 1, ¶ 50 ("[t]he scientific literature relied on by Defendants to obtain a patent for Super Creatine indicates that a person should start by taking 20,000-25,000 milligrams of creatine per day for three to seven days (loading period) and then 5,000 milligrams per day thereafter (maintenance period). Despite all of Defendants' misleading claims of benefits and cures, a can of BANG contains less than 40 milligrams (0.040 grams) of Super Creatine, which again is more than 100 times lower than the minimum amount of creatine shown to be an effective dose.").

**IV.    Plaintiffs Allege Facts Demonstrating That BANG Either Contains No Creatine, CoQ10, and BCAAs, or Contains Only Trace Amounts Incapable of Delivering the Benefits Represented.**

Plaintiffs allege facts, including testing results, demonstrating that BANG either includes no Creatine, CoQ10, and BCAAs, or contains these ingredients in such small amounts to render them ineffective at delivering the benefits represented. There is nothing "contradictory" in alleging either the absence of these highly touted and prominently advertised ingredients, or nugatory amounts such that they deliver no discernable health benefit associated with that ingredient.

These detailed factual allegations, taken as true, are more than sufficient to "state a claim to relief that is plausible on its face." *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also State Farm Mut. Auto. Ins. v. Advanced Chiropractic & Med. Ctr. Corp.*, No. 18-CV-21127, 2019 WL 2534908 (S.D. Fla. Mar. 15, 2019) (citing *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006)) ("And at the motion-to-dismiss stage, a court must take all factual allegations and reasonable inferences in the complaint to be true, regardless of whether they are currently supported by expert opinion"). VPX's boilerplate lack of specificity arguments have no merit.

BANG either contains no creatine or nowhere close to the amount of creatine needed to produce the benefits represented. For creatine to be effective, it is recommended that consumers follow a creatine loading technique, during which they consume relatively high amounts of creatine for at least three days, "followed by ingestion of 3 to 5 grams a day thereafter to maintain creatine stores." Nguyen ACAC ¶ 21; St. Fort ACAC, Ex.1 ¶ 50. Testing revealed that BANG contains less than .04g of creatine—75 times less than the minimum daily amount needed to

maintain creatine stores. Nguyen ACAC ¶ 21; St. Fort ACAC ¶ 11, *see also* St. Fort ACAC, Ex. 1 ¶ 36. A second test found no creatine at all in BANG. Nguyen ACAC ¶ 21.

Testing concluded that BANG contains no CoQ10. Nguyen ACAC ¶ 23. Even if that were not the case, ingesting CoQ10 "by mouth, alone or with other ingredients, does not improve athletic performance in athletes or nonathletes." Nguyen ACAC ¶ 21. Testing also concluded that BANG contains only .09g of BCAAs, an amount between 111 and 222 times less than the 10 to 20 grams per day of BCAAs studies have found to be sufficient to change body composition or improve exercise performance or enhance the effects of physical training. Nguyen ACAC ¶¶ 24, 26, 27; St. Fort ACAC, Ex. 1 ¶ 62 ("In short, the amount of BCAAs in BANG—approximately 150 milligrams—is almost 100 times lower than the amounts tested in VPX's own cited research.") These detailed factual allegations demonstrate BANG is incapable of providing the benefits represented. *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1344 (S.D. Fla. 2013) ("In other words, Plaintiffs are not claiming that there is no scientific evidence to support WhiteWave's brain health representations; instead, they are claiming that the competent scientific evidence shows that WhiteWave's representations are actually false.").

VPX's argument to the contrary rests on authority that is not on point. Plaintiffs' allegations are markedly different from those in *Eckler v. Wal-mart Stores, Inc.*, 2012 WL 5382218, at *1 (S.D. Cal. Oct. 31, 2012), where the court found studies concluding that glucosamine did not alleviate the symptoms of osteoarthritis in the hip and knee—a very specific condition—insufficient to support that the defendant's representation that "glucosamine is good for the body's joints" was false or misleading. VPX's position is also distinguishable from *Guerrero v. Target Corporation*, 889 F. Supp. 2d 1348 (S.D. Fla. 2012), where the court found the plaintiff's

allegations insufficient to put the defendant on notice of the claims against it, because the plaintiff failed to allege any "specific details regarding how [he knew] that Defendant's honey did not contain pollen." *Id.* at 1355.

The remainder of VPX's arguments are misplaced. VPX attempts to rebut Plaintiffs' allegations demonstrating that BANG contains no creatine or so little creatine that it could not deliver the benefits promised by arguing that the ingredient it refers to as "SUPER CREATINE" (creatyl-L-leucine) is actually a form of creatine. No discovery has occurred, and it is inappropriate at this juncture for VPX to attempt to argue the facts of its case. The Court should disregard VPX's unsupported factual assertions entirely, which are neither responsive to allegations in the Complaint nor subject to judicial notice.

VPX's argument that Monster Energy's claims support its position is ridiculous. As recognized by the *Monster* Court, Monster Energy's Lanham Act claim rests on the argument that BANG's labeling was false and misleading because BANG contains no actual creatine and creatyl-L-leucine does not provide the benefits of creatine. *See Monster Energy Co. v. Vital Pharmas., Inc.*, No. 18-cv-01882 (C.D. Cal. Sept. 4, 2018) (this specific reference can be found in Doc. 122) ; *see also Thermolife Int'l, LLC v. Vital Pharmas., Inc.*, No. 19-CV-61380-BB (S.D. Fla. Oct. 10, 2018) (this specific reference can be found in Doc. 1) (alleging that SUPER CREATINE is not creatine and will not break down into creatine when ingested).

VPX's attempt to characterize the testing results in the *Monster* case as inconsistent with those in the *Madison* case likewise fails. The *Madison* plaintiff tested for actual creatine, which is not an ingredient in BANG. The fact that the *Madison* plaintiff did not also test for creatyl-L-leucine does not render such testing inconsistent with that from the *Monster* case.

VPX's reliance on *Toback v. GNC Holdings, Inc.*, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) is misguided. The *Toback* defendant marketed a product containing glucosamine, chondroitin, cutch tree extract, Chinese skullcap root extract, methylsulfonyl-methane, white willow bark extract, fish oil, and other substances, as a "comprehensive Vitapak program that supports improved joint health." *Id.* at *5. The plaintiffs claimed that glucosamine and chondroitin—two discrete components in the products—did not promote joint health and function. *Id.* Because the plaintiff failed to challenge the product's "multifarious composition in promoting joint health," the court found the plaintiff's claims insufficient to support that the product as a whole did not function as advertised. *Id.*

In contrast to *Toback*, VPX does not promote a multitude of ingredients. Rather, the labels of BANG prominently proclaim that the products contain SUPER CREATINE, ULTRA COQ10, and BCAA AMINOS providing potent brain & body rocking fuel. These ingredients are either absent entirely or present in quantities too small to achieve the represented benefits.

Defendant's reliance on *Dabish* is also not persuasive. In *Dabish,* the labels on the products mispresented that "'Creatine Nitrate increases 'strength, endurance, muscle mass, and overall performance.'" *Dabish v. Musclepharm Corp.*, Case No. 3:15-cv-02848-CAB-AGS (S.D. Cal. Sep. 26, 2016) (this specific reference can be found at ECF Doc. 37 at 16). For the plaintiffs to survive the motion to dismiss, they had to "allege [in their complaint] studies showing that Creatine Nitrate does not 'increase strength, endurance, muscle mass, and overall performance' not simply that there is no information one way or the other." *Id.* (citation omitted). Plaintiffs failed to satisfy this requirement and the court dismissed plaintiffs' claims based on the alleged misrepresentations regarding Creatine Nitrate "[b]ecause none of the studies cited in the [complaint] demonstrate[d] the falsity of any of the alleged false statements on the Class Product labels about Creatine Nitrate

. . . .” *Id.* at 17. “[T]he studies on which Plaintiffs rely concern[ed] either the safety of Creatine Nitrate or the efficacy of Creatine *Monohydrate*.” *Id.* at 16.

Plaintiffs' case is much different regarding BANG. Specifically, VPX touts the benefits of the different ingredients multiple times on its label and independent testing has revealed that these representations are deceptive because BANG does not contain the ingredients at all or in amount sufficient to provide the represented benefits. Moreover, at this stage of the proceedings, it is premature to discuss the relevance of the testing regarding creatine monohydrate because such is a factual determination. Moreover, unlike in *Dabish* Plaintiffs never admitted that creatine monohydrate is not the same as the Super Creatine contained in BANG. *Id.* at 17.

Furthermore, specifically for FDUTPA, many cases support the viability of claims based on factual allegations not supported at the initial pleading stage by attached expert conclusions. *See BPI Sports, LLC v. Labdoor, Inc.*, 2016 WL 739652, at *5–6 (S.D. Fla. Feb. 25, 2016) (FDUTPA claim based on “unsubstantiated, biased, and deceptive rating system” could be stated by competitor if causation and damages are present); *See Fitzpatrick,* 263 F.R.D. at 697 (“Also integral to the determination of whether General Mills' statements are deceptive under the FDUTPA is the scientifically complex question of whether Yo-Plus does, in fact, work as advertised, and the related question of whether General Mills possessed sufficient evidence to confirm its claims about Yo–Plus' purported digestive health benefits before making them.”); *Smith v. WM. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1340-41 (S.D. Fla. 2009) (unsubstantiated claim that Eclipse gum helps kills germs that cause bad breath could be deceptive under FDUTPA). Other courts have identified a lack of authority on the issue whether FDUTPA claims based on unsubstantiated claims are foreclosed. *See In re Horizon*, 955 F. Supp. 2d at 1343 n.12.

Indeed, as Judge Bloom recently recognized in Thermolife, "[a]t best, VPX's arguments in this regard simply constitute denials of Thermolife's allegations and are not a basis for dismissal. Whether or not the materials relied upon by Thermolife ultimately support its claims is a question of fact not suitable for disposition upon a motion to dismiss." *See ThermoLife Int'l LLC*, 2019 WL 4954622, at *4 (footnote omitted).

**V.     Plaintiffs' Claims Satisfy the "Unfair" Prong of the UCL.**

VPX argues that Plaintiffs fail to satisfy the "unfair" prong of the UCL because Plaintiffs do not identify the legislative policies that VPX offended. This argument misrepresents the applicable legal test, ignores Plaintiff Nguyen's allegations specifically citing the policies violated, and has no merit.

The unfair prong of the UCL prohibits a business practice that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017). Because California law is unsettled with regard to the standard applied to consumer claims under the unfair prong of the UCL, courts have applied two competing tests: 1) the balancing test; and, 2) the tethering test. *Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d 718, 736 (9th Cir. 2007).

Under the traditional balancing test, "an act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Hadley*, 243 F. Supp. 3d at 1104. Courts are reluctant to grant motions to dismiss "unfair" UCL claims based on the balancing test, because the test involves weighing evidence that is not yet properly before the court. *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 929 (N.D. Cal. 2015).

Under the tethering test, a business practice is unfair if a plaintiff alleges that Defendant violated a "legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999). The Ninth Circuit has approved the use of *either* the balancing test or tethering test in consumer actions. *Lozano*, 504 F.3d at 736 ("In the absence of further clarification by the California Supreme Court, we endorse the district court's approach to the law as if it still contained a balancing test.").

Notwithstanding Defendant's failure to apprise this Court of the balancing test, Plaintiff Nguyen satisfies the unfair prong of the UCL under *both* tests. Under the balancing test, she has sufficiently alleged that the economic benefit to VPX is outweighed by the economic loss to her. For example, Paragraph 137 of the Nguyen ACAC states: "Plaintiff Nguyen and the California Class have been damaged by VPX's deceptive and unfair conduct in that they purchased a misbranded and worthless product or paid prices they otherwise would not have paid had VPX not misrepresented the product."  As such, Plaintiff Nguyen states a claim under the balancing test. *See Goldsmith v. Allergan, Inc.*, CV 09-7088 PSG EX, 2011 WL 2909313, at *7 (C.D. Cal. May 25, 2011) ("Plaintiff's allegation that the economic benefit to Defendant is outweighed by the danger to patients and economic loss suffered by providers sufficiently states an unfair-prong UCL claim.").

Furthermore, Plaintiff Nguyen's claims under the UCL identify specific legislative policies that VPX violated, thus satisfying the tethering test. Specifically, Plaintiff Nguyen alleges that VPX violated the following policies: 1) the California FAL, 2) the California CLRA  and, 3) the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301. Nguyen ACAC ¶ 134.

Accordingly, the Nguyen ACAC states a claim under the "unfair" prong of the UCL. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1205 (9th Cir. 2010); *see also MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1099 (N.D. Cal. 2014) ("Under the balancing test, Ford's failure to disclose the alleged safety problems with its cooling pumps was without utility, and therefore does not outweigh the harm plaintiffs suffered as a result of the defective pumps. Under the *Cel– Tech* test, plaintiffs' claim succeeds because it is tethered to the CLRA, as discussed above.").

## VI.   Plaintiffs Have Standing to Seek Injunctive or Declaratory Relief Because They Have Sufficiently Alleged an Actual Threat of Future Harm.

Plaintiffs allege facts demonstrating that they have standing to seek injunctive and declaratory relief. VPX is wrong in claiming that Plaintiffs allege no harm.

To have standing, a plaintiff must sufficiently allege the following: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (quotations and citation omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (quotations and citations omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'" *Id.* (citations omitted).

Plaintiffs have more that sufficiently pled an actual injury when they demonstrated that they were deceived into purchasing VPX's BANG product based on the representations made on its cans as well as through its marketing, that they actually purchased the product, and now multiple scientific tests have confirmed that VPX mislead consumers regarding the ingredients in BANG.

This injury is particularized because each Plaintiff has individually overpaid for BANG and the injury is real because VPX would not have been able to charge such a premium were it not for the misrepresentations it made on its cans and through its marketing.

Plaintiffs also sufficiently plead a future injury, which is needed for them to obtain declaratory and injunctive relief. Throughout the complaint, Plaintiffs allege that they have already sustained, continue to sustain, and will sustain in the future further damages as a result of VPX's conduct. *See, e.g.* Nguyen ACAC ¶¶ 74, 86, 109; St. Fort ACAC ¶ 53 ("Plaintiff and the Class have suffered and will continue to suffer irreparable harm if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.") At this stage of the proceedings, this is more than sufficient because the Court must assume Plaintiffs' allegations are true. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) ("We therefore accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor.") (citation omitted).

VPX's reliance on *Abraham v. Ocwen Loan Servicing, LLC*, 321 F.R.D. 125 (E.D. Pa. 2017) is also unpersuasive for the proposition that Plaintiff Muscara's claims for injunctive and declaratory relief under the UTPCPL must be dismissed. MTD at 19 n.11. In *Abraham,* the district court misinterpreted Pennsylvania's relevant statutory language. Pennsylvania's UTPCPL permits private actions in the following manner:

> Any person . . . may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), *and may provide such additional relief as it deems necessary or proper*.

73 Pa. Stat. Ann. § 201-9.2 (footnote omitted) (emphasis added). This language expressly permits a court to provide additional remedies including injunctive and equitable relief  The *Abraham* Court improperly held that the UTPCPL's statutory language that grants the Attorney General and

District Attorney the right to sue for injunctive or declaratory relief, limits the availability of those remedies to only those parties. The relevant statutory language provides:

> Whenever the Attorney General or a District Attorney has reason to believe that any person is using or is about to use any method, act or practice declared . . .unlawful, . . . he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice."

73 Pa. Stat. Ann. § 201-4 (footnote omitted). Just because this statutory section permits the Attorney General or District Attorney to use equitable relief, does not mean that the legislature specifically intended private litigants to be foreclosed upon from obtaining the same relief. In fact, this interpretation does not make sense in light of the legislature specifically including the phrase "*and may provide such additional relief as it deems necessary or proper*[,]" in 73 Pa. Stat. Ann. § 201-9.2 (the statutory authority for private litigants to bring causes of action).

## VII.    The Economic Loss Rule Does Not Bar Plaintiffs' UTPCPL and Negligent Misrepresentation Claims.

In *Werwinski v. Ford Motor Co.* the Third Circuit predicted that Pennsylvania law would bar a UTPCPL claim solely for economic damages because of the economic loss doctrine. *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002). However, this Court must consider the context for how the Third Circuit reached this holding. In *Werwinski*, "[b]ecause the question posed involved a controlling issue of state law, the Third Circuit first turned to the Pennsylvania Supreme Court for guidance. However, the Pennsylvania Supreme Court had not spoken on the issue." *Lovelace v. Nationwide Mut. Ins. Co.*, No. CV 18-2701, 2018 WL 3818911, at *2 (E.D. Pa. Aug. 10, 2018). "[T]he Third Circuit was left to predict how the highest court in Pennsylvania would rule by looking to the decisions of Pennsylvania's intermediate courts." *Id*. However, at the time of *Werwinski,* Pennsylvania's intermediate appellate courts had not addressed whether the

economic loss doctrine would bar a UTPCPL claim in a published opinion. *Id.* Accordingly, the

Third Circuit looked outside of Pennsylvania. *Id.*

> The landscape, however, changed dramatically when the Pennsylvania Superior Court decided *Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. Ct. 2013). In *Knight*, the appellees asserted that the economic loss doctrine barred the appellant's UTPCPL claim because only economic damages had been alleged. *Id.* at 951. The Superior Court disagreed. It concluded that "[t]he claims at issue in this case are statutory claims brought pursuant to the UTPCPL, and do not sound in negligence. Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to Knight's UTPCPL claims." *Id.* The decision in *Knight* was recently followed in another case before the Pennsylvania Superior Court, *Dixon v. Northwestern Mutual*, 146 A.3d 780, 790 (Pa. Super. Ct. 2016) ("Dixon's UTPCPL claim is not barred by the economic loss doctrine.").

*Id.* at 3. Therefore, as pointed out last year, the landscape has changed since *Werwinski* and

Pennsylvania courts have now held that "the economic loss doctrine does not apply to UTPCPL

claims." *Id.* (quotations and citation omitted).

VPX wants this Court to rely on *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476 (E.D.

Pa. 2016) but it is not nearly as persuasive at VPX suggests. Regarding the UTPCPL, the district

court in *Whitaker* concluded that it could not depart from the Third's Circuit prediction of how the

Pennsylvania Supreme Court would rule in *Werwinski* because of the Pennsylvania Superior

Court's decision in *Knight*. Accordingly, the district court concluded it was bound by *Werwinski*.

*Whitaker*, 198 F. Supp. 3d at 490. However, the district court in *Whitaker* reached its decision

before the Pennsylvania Superior Court's decision in *Dixon* (which followed the Superior Court's

decision in *Knight*).

Plaintiffs recognize that a district court can almost never depart from its own Circuit's

predictive precedent regarding how a state supreme court would rule on a given issue. However,

as the Court in *Whitaker* acknowledged:

> [A] showing of "persuasive evidence" that state law has changed could nullify predictive precedents. *Robinson v. Jiffy Exec. Limousine Co.*, 4 F.3d 237, 240-42 (3d Cir.1993) ("[W]hen we are applying state law and there is persuasive evidence that it has undergone a change, we are not bound by our previous panel decision if it reflected our reliance on state law prior to its modification.").

*Whitaker*, 198 F. Supp. 3d at 489 n.7.  The *Whitaker* Court only had the benefit of *Knight* when it reached its holding. Since *Whitaker* there has been an additional published Superior Court decision (*Dixon*) in support of the *Knight* position, which leads to the conclusion that there is persuasive evidence that the law of Pennsylvania has come out differently than the Third Circuit's prediction in *Werwinski.* Accordingly, federal district courts are no longer bound by *Werwinski. See Robinson*, 4 F.3d at 242  (reversing its previous prediction of how the New Jersey Supreme Court would rule after it had the "the benefit of two intermediate state appellate decisions directly on point which undermine our former judgment."); *see also Sweitzer v. Oxmaster, Inc.*, No. CIV.A. 09-5606, 2010 WL 5257226, at *4 (E.D. Pa. Dec. 23, 2010) ("Of course, [a federal district court] must follow the Court of Appeal's prediction of Pennsylvania law as a general rule, except when the state's highest court issues a decision contradicting that prediction *or state intermediate appellate court's decisions subsequently indicate that prediction has not come to pass.*") (citations omitted) (emphasis added).

There is also no merit to VPX's argument that this Court should rely on *Whitaker* to dismiss Plaintiff Muscara's negligent misrepresentation claim. The district court in *Whitaker* reached its decision to bar plaintiff's negligent misrepresentation claim "because the *Bilt-Rite* [*Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005)] exception d[id] not apply. . . ." *Whitaker*, 198 F. Supp. 3d at 492. However, the district court in *Whitaker* did not have the benefit of the Pennsylvania Supreme Court's decision in *Dittman v. UPMC*, which significantly reduces

the potential scope of Pennsylvania's economic loss doctrine. 196 A.3d 1036 (Pa. 2018) (Addressing two of its pertinent cases on the economic loss doctrine, the Pennsylvania Supreme Court held "[h]aving set forth our decisions in [*Bilt-Rite*] and [*Excavation Techs., Inc. v. Columbia Gas Co. of Pennsylvania*, 985 A.2d 840 (Pa. 2009)], we hold that those cases do not stand for the proposition that the economic loss doctrine, as applied in Pennsylvania, precludes all negligence claims seeking solely economic damages.").   Rather, "[u]nder Pennsylvania's economic loss doctrine, recovery for purely pecuniary damages is permissible under a negligence theory[,] provided that the plaintiff can establish the defendant's breach of a legal duty arising under common law that is independent of any duty assumed pursuant to contract." *Dittman*, 196 A.3d at 1038. Accordingly, under *Dittman*, the key to the Court's analysis is the source of the respective duty. *See New Berry, Inc. v. Manitoba Corp.*, No. 2:18-CV-01528-MJH, 2019 WL 452493, at *4 (W.D. Pa. Feb. 5, 2019); *see also Gernhart v. Specialized Loan Servicing LLC,* No. CV 18-2296, 2019 WL 1255053, at *4 (E.D. Pa. Mar. 18, 2019).

Here, Plaintiff Muscara has sufficiently alleged that VPX violated a common law duty that is independent of any contractual duty between the parties. Plaintiff Muscara alleges as follows: "[i]ndependent of any contractual relationship between the parties, VPX had a duty to fairly and accurately disclose and represent its Products on its labels, website, advertising, and marketing literature. However, likely aware of how consumers make purchasing decisions in this industry, VPX used these misrepresentations regarding its Products' quality to command a premium price from consumers." Nguyen ACAC ¶ 165.

Moreover, in the unlikely event this Court finds that no common law duty exists, the creation of a new duty to preclude corporate conduct such as VPX's only makes sense. In Pennsylvania, in the absence of an existing common law duty of care, courts

> [m]ust weigh the following five factors: (1) the relationship between the parties; (2) the social utility of the [defendant's] conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the [defendant]; and (5) the overall public interest in the proposed solution. No one of these five factors is dispositive. Rather, a duty will be found to exist where the balance of these factors weighs in favor of placing such a burden on a defendant.

*Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008-09 (Pa. 2003) (quotations and citation omitted).

Plaintiff Muscara had a relationship with VPX from purchasing its products. VPX also has much more information at its disposal than Plaintiff Muscara regarding the quality and composition of its products. VPX's misleading representations caused consumers to pay a premium price for an inferior product and these representations lack any social utility. VPX's misleading representations led consumers to overpay for inferior products. The foreseeability of this harm is quite apparent from the case Plaintiff Muscara brings. Imposing a duty on VPX will not have significant consequences because Plaintiff Muscara only seeks to prevent VPX (and other similar companies) from omitting key information and engaging in misleading representations. Public interest in imposing such a duty is high because such a duty would add another tool to hold businesses accountable when they engage in deceptive business practices to mislead consumers. The court imposing such a duty also comports with the legislative purpose of the UTPCPL

## Conclusion

VPX's marketing of its BANG products is deceptive and unfair. The Plaintiffs' Complaints sufficiently plead the elements of the allegations with supporting facts that make it plausible that they are entitled to relief on each of their respective claims. Plaintiffs should be permitted to prove their allegations through targeted discovery. Moreover, Plaintiffs have been damaged and have standing to obtain injunctive and declaratory relief. Accordingly, Plaintiffs respectfully ask this Court to deny VPX's Consolidated Motion to Dismiss.

Respectfully submitted,

/s/ *Lance A. Harke*
Lance A. Harke, P.A.
Florida Bar No. 863599
lharke@harkelaw.com
Tammi A. Calarco, Esq.
tcalarco@harkelaw.com
Florida Bar No. 121788
**HARKE LAW LLP**
9699 NE Second Avenue
Miami Shores, FL 33138
Telephone:     (305) 536-8220
Facsimile:      (305) 536-8229

*Counsel for Plaintiffs*

Ben Barnow, Esq.
*admitted pro hac vice*
b.barnow@barnowlaw.com
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone:  (312) 621-2000
Facsimile:  (312) 641-5504

*Counsel for Plaintiffs*

/s/ *Jason R. Alderman*
Jason R. Alderman, Esq.
jalderman@thealdermanlawfirm.com
Florida Bar No. 172375
Troy A. Tolentino, Esq.
ttolentino@thealdermanlawfirm.com
Florida Bar No. 117981
**THE ALDERMAN LAW FIRM**
9999 NE 2nd Avenue, Suite 211
Miami Shores, FL 33138
Telephone: 305-200-5473
Facsimile:  305-200-5474

*Counsel for Plaintiffs*

Charles E. Schaffer, Esq.
*admitted pro hac vice*
cschaffer@lfsblaw.com
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone:  215-592-1500
Facsimile:  215-592-4663

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed on November 5, 2019 with the Clerk by using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Jason R. Alderman*
Jason R. Alderman